## In re Animal Protective and Rescue League, etc.

*J. R. Smiley* and *Wade K. Newell,* for petitioners.

COTTOM, J., November 19, 1952.—This case is before the court on an application for a charter for a nonprofit organization.

A protest was filed by the Fayette Society for the Prevention of Cruelty to Animals, a corporation.

In the instant case the application seems to be in proper form and conforms with all the requirements of the Non-Profit Corporation Law of May 5, 1933, P. L. 289. However, the purposes for which the charter is asked are very similar to the purposes set forth in the charter granted to the protestant corporation in 1912 by this court. The only controversy in this case relates to the clause "not injurious to the community." As we see it the necessity for the intended corporation is not for us, except as it bears upon the general question of whether the intended corporation will be injurious to the community.

There is no testimony that the group asking for this charter has ever, as an unincorporated society, functioned along the lines which they now set out as the purpose of the corporation. There has never been any meeting of the incorporators, no officers were ever

elected although the application sets forth the officers' names and addresses, as well as the address of the proposed corporation.

In looking into the background of the incorporators the testimony shows that Miss McIntyre, Mrs. Dudley and Mrs. Crosby were all former members of the protestant Fayette Society for the Prevention of Cruelty to Animals. Miss McIntyre was for some time the enforcement officer of the society; during her tenure in office difficulty arose as to her making informations without the authority of the directors, as was the custom, and as a result Miss McIntyre was relieved of her duties, and since that time has been very hostile and antagonistic to the work of the society.

Mrs. Dudley, a member of the society for a number of years, serving as a director some four years, disagreed with the other directors and members over the care and disposition of dogs confined in the refuge operated by the society. The society, a member of the Western Pennsylvania Humane Society and affiliated with the National organization, made every effort to comply with their rulings and regulations; although Mrs. Dudley knew of these facts she took issue with the society's doing away with sick, diseased and homeless dogs by a veterinarian, and as a result she resigned from the society; since that time has embarrassed the society in quite a number of ways, and at the hearing she was very antagonistic to the work being done by the society.

Mrs. Crosby, the only other incorporator called to testify, had also been a former member of the society but withdrew because of lack of time and interest; it appearing that although married and the mother of two children, she works and was quite busy and could give no time to the affairs of the society and never attended any of their meetings, although she testified that the society did good work. Mrs. Crosby was con-

tacted by Miss McIntyre and her only activity with the new group, so far, was to sign the petition as an incorporator.

The protestant incorporated society has been in existence since 1912, has been actively engaged in carrying out the purposes for which it was formed since its incorporation. This group derives its finances from its members, which number, each year, from 342 to 350, as well as from contributions received from the County Commissioners of Fayette County and other citizens who wish to help in the good work being done by the society. The work of the society has been county-wide and its membership is made up of representative persons distributed over the county area. The society often has difficulty in obtaining sufficient funds with which to carry on its program, and if another such society was to be incorporated it appears to the court that contributions now received by the one society would be lowered and the work which has been carried on over a period of 40 years could not be as efficiently done as in the past, this being brought about by lack of funds; and the new organization, because of lack of funds, could not operate successfully for the same reason.

These societies under existing law are unique in that they are given police powers and empowered to make arrests and conduct prosecutions. The society shares any fines imposed upon defendants. In these days of efficient and well organized public police forces, throughout Fayette County, we look with disfavor upon any increase in the number of private agencies invested with these powers. An individual whose compensation may depend to some extent upon the fines collected is faced with a grave temptation to bring unfounded and unnecessary prosecutions, and with perhaps the help of a coöperating magistrate, oppress the public. This tends to lower the public conception

of the administration of justice and hence is injurious to the community.

It is not in the general interest that any small group of individuals, the applicant group having at the time of its application only five incorporators and no other members, should have it within their power to obtain a charter to duplicate a public work already being sufficiently well performed by an incorporated organization and to bring about a diffusion of public support. There is no need for the additional corporation; that is, the evidence discloses no need and because the approval of a charter will create general confusion in the minds of the public, there appears to us sufficient reason for disapproval.

Taking it all in all, the good work being done throughout this county by the existing corporate group, the animosity existing by two of the incorporators of the group seeking a charter is a most unhealthy and unhappy state of affairs. To grant the charter will tend to intensify and perpetuate this feeling which will be a distinct injury to the community. We cannot find and certify that the real purposes of the proposed corporation will not be injurious to the community.

In Philadelphia Labor's Non-Partisan League Club's Application for Incorporation, 328 Pa. 465-469, Mr. Justice Schaffer said:

"The duty of the court is somewhat different in passing upon charter applications laid before it from what it is in some other matters, because it is required by the law to certify that the purpose or purposes given in the articles are lawful and not injurious to the community. The applicants must satisfy the court as to the propriety of its certificate, 'otherwise,' in the language of the act, 'the court shall refuse the application.' It should always be borne in mind that in charter applications the applicants are asking the

court for a special privilege as to the propriety of granting which, its conscience must be satisfied."

For further authority attention is called to the following decisions: In re Application of Pulaski Township Firemen, 78 D. & C. 170; In re Incorporation of National Gold Star Mothers, 71 D. & C. 526; In re Animal Humane Society of Pennsylvania, 33 D. & C. 327.

We are compelled, under the facts in this case, to conclude that the purpose of the proposed corporation would be injurious to the community and that the application should be denied.